Good morning, Your Honors. May I please the Court? My name is Jonathan Rubin. I'm from the firm of Patent Bonds. I represent Stanfacts, and the other plaintiffs in this case with me at the Council table is Gary M. Kassin, owner of Stanfacts. I need a lot of help on this case. It's difficult to understand. As far as I can tell, the federal government imposed some strange deal in 1933 that basically created a cartel of the three major credit reporting agencies. And that's at the wholesale level, which your client is not in and has taken no substantial steps to enter. Is that right so far? That's close, Judge. You're referring to the Tri-Merge Rule, which is an underwriting standard that was implemented in 1995 or thereabouts. I think it started with the 1933 dispute, and then there was... Well, there was a 1933 consent order that the Department of Justice... Consent decree. That had to do with anti-competitive conduct by the credit bureaus with respect to the various networks that were out there and who could be in and who could be out of their trade association. That's a slightly unrelated issue. The Tri-Merge Rule is an underwriting standard. I thought the 1933 consent decree created the cartel, and then the 1995 Tri-Merge Rule makes everybody buy reports from all three of them and make a merged report. I don't believe there's a connection between... Is that right? I don't think so, Judge. I don't think there's a connection between the 1933 consent order, which had to do with... So I can forget about that? You can forget about that other than it shows an anti-competitive bend on the part of the defendants in this case. Let's go to the next step, then. Yes, sir. If I understand it right, the federal government says that when you sell a credit report at the retail level to the bank or other lender, you have to buy reports from all three of the majors and you have to write a merged report. And it doesn't matter even if you're one of the three majors and you decide to participate in that retail market, you still have to buy reports from the other two majors and write a merged report. Am I right on that? Almost. Okay. I don't believe it's the federal government that's imposed the rule. I think the Tri-Merge Rule came about by a lobbying effort on behalf of the three credit repositories. They hired Arthur Anderson to do a study that convinced these government-sponsored entities, the Fannie and Freddie principally, that their underwriting standards would be strengthened if they had a rule that said that a mortgage credit report must come from all three majors. So it's Fannie Mae and Freddie Madison. It's Fannie and Freddie's underwriting standards that create the Tri-Merge Rule. They sometimes look like government and they sometimes look private, and I can never figure out... Perhaps whatever's convenient for them at the time, perhaps. I'm not sure. I think it's more accurate to say that Fannie and Freddie as underwriting financial institutions are responsible for the Tri-Merge Rule rather than to say that it was any kind of law or regulation implemented by the federal government. Okay. So that's not... It's not Fannie Mae and Freddie Max's fault. It's not the doing, except by perhaps lobbying for it, of Experian and the other two majors. Absolutely, Your Honor. This case involves the willful maintenance of what is arguably a lawful monopoly. Now, the next step, I'm trying to think what the next step is. I'm having... I have to have an understanding of a plausible theory to get past Twombly and Kendall, and that's where we've gotten to right now, and now I don't understand exactly what the theory is. Well, I believe there's only one issue in the case for this Court, and it's based on the fact that for at least at this appeal, for this appeal, that we accept the allegations of the relevant market in the complaint and the anti-competitive conduct that's in the complaint. Yes and no. Twombly and Kendall qualify that. It has to be plausible as a theory. I understand. It doesn't get accepted like in a personal injury case. No, the theory has to be plausible, but the facts with respect to anti-competitive conduct, market definition, et cetera, they also, of course, have to be plausible. They have to be plausible. Absolutely. The issue that confronts this Court, Your Honor, is whether or not the Count 1 of the Second Amendment complaint for willful monopoly maintenance was properly dismissed, and that issue was framed by the district court, and they asked a question that just paraphrased. It's de novo. It's de novo, so just give it to me straight. Well, okay. How does defendant's conduct forestall entry of plaintiff or anyone else into the wholesale market? That was the issue. Good question. Show us how Stanfax is, let's see, there's some jargon on this. They have to be ready and have taken substantial steps to enter the market, and then there has to be something in the nature of monopolization that prevents them from doing it. I don't believe they have to have any steps to enter the market. I don't think they have to have any plans to enter the market. I thought they needed substantial steps to have antitrust standing. I can't bring an antitrust case against Wal-Mart because I'm not going to get into the big box store business. Well, if you can, if you can show that you're paying monopoly prices directly to Wal-Mart because of Wal-Mart's anti-competitive conduct, that would be standing based on being a consumer and having to pay monopoly prices. Okay. We are also having to pay monopoly prices. Now, explain what it is that's, you say that the theory is that you have to pay too much. No, that's not the theory. I'm just giving an example of why you don't have to be a potential entrant to achieve antitrust standing. Any antitrust injury will give you sufficient standing under Brunswick. Okay, that's helpful. Now, explain the theory. What is the monopolization here that's accomplished? Well, it's stated in the complaint, and it's in the excerpt of record at page 50. I know, but I want it in your own words because I didn't understand it. Okay. Well, here's the allegation, the key allegation, and hopefully that will help. Independent resailers pose a threat to the continuation of the tri-merge regime and pose a threat to monopoly power in the inter-bureau market for credit reports. You're not explaining this in your own words. You're now mumbling as you read something off a piece of paper. I'm reading the complaint, Your Honor, and I'd be happy to explain it. Tell me like you were telling somebody who wasn't a lawyer. Tell me like you were explaining it to your ninth-grade daughter exactly what's going on here. Okay. The Defender Repository has convinced the underwriting institutions to make a tri-merge rule as part of creating a mortgage. In order to maintain that rule, they are eliminating the smaller independent mortgage credit reporting agencies. Why? Because those smaller mortgage credit reporting agencies are independent, shed light on the mortgage credit report process, are opposed to the tri-merge rule. Prior to 1995, they lived under a two-out-of-three rule. They could be very happy with three-out-of-four rules. But it means that they're subject to now media. You must have a very bright nine-year-old daughter. I didn't understand a thing you said. Media is your very smart mouth. My ninth-grade daughter says, gee, it sounds like the whole problem is the tri-merge rule. It is the problem. And that comes from Fannie Mae and Freddie Mac. Yes, it does. So why are you suing them? Well, you'll have to ask that back to my clients. My clients are the ones that are being driven out of business, which we claim is an antitrust injury. Yeah, but they're beefists with these people that adopted this rule. Why are you suing these guys? Well, because – What did they do? What they're doing is they are – we have a list of anti-competitive conduct in the complaint. What you've got is a Nora Pennington problem. I don't think so, Judge. There was a book by a Marxist professor, Gabriel Kalko, about the progressive era, and he said a lot of what looked like progressive legislation, a book about 50 years ago, was actually the big boys getting regulations from the federal government that the little guys couldn't meet so that the big guys get to monopolize the market. And it looks to me like that's basically the complaint here. The big boys got these quasi-governmental agencies to impose regulations so that the little guys can't play in the same league. That's right. It may be true, but under the Nora Pennington doctrine, I don't think it gets you anywhere. But, Judge, we're not suing for the tri-merge rule having been created or for the monopoly being attained by these defendants. We are suing for what their conduct has been once they have gotten monopoly power, and their conduct has been a campaign of eliminating all the smaller mortgage credit reporting agencies. They want them out. They want them out because they are the only constituency. But wanting is not illegal. Pardon me? Wanting is not illegal. Well, except they have been using their monopoly power in order to achieve that end. So what are they doing? They are imposing price squeezes. They are imposing unreasonable contract terms. They are changing the contracts every two months so that they're always out of compliance. They are auditing them in a disruptive fashion. They are lowering their retail prices and their competitive subsidiaries and raising their wholesale prices. They have driven easily 800 of these independent mortgage credit reporting agencies out of business since the mid-1990s when the tri-merge rule was imposed. So they are eliminating a segment of the market, and they're doing it for their own purposes. What are their purposes? Well, this segment of the market is the only friend you have when you're making a mortgage loan in the credit reporting industry. They are the only constituency. They work with brokers and smaller banks. Are they competitors? They are competitors with the subsidiary. There's one remaining of the three defendants. There's one that has a subsidiary that is competing with my clients selling tri-merge mortgage credit reports. That is correct. Is monopoly power being used in the competition? Well, the monopoly power is being used by all of them, but that in particular, that company, that's Equifax, and that is being used in competition against my clients, and that's the subject of another action. That deals with a different market because that deals with the mortgage credit reporting market per se. This is a monopoly maintenance action. Here's a good way I could be – I don't have a 9-year-old daughter. I have a 6-year-old son. Here's what I would say. Son, I'm going to court because the defendants are burning down my client's business. Why are they doing that, Dad? That's metaphoric. Right. Why are they doing that, Dad? Well, the reason they're doing that is because they've got this very valuable misguided policy that they've been able to convince the lending community. Wait, wait, wait. I don't care why. The why is obvious. To make money. Well, to make money. The only question is whether it's an illegal way to make money instead of a legal way to make money. To make monopoly money. Judge, if you buy something that requires a credit report and you go to your car dealer, he buys a credit report for 50 cents or 75 cents or a dollar. If you're in the tri-merged mortgage credit reporting business, that precise same raw credit report you have to buy from a repository for $2.50 or $3.00 or more. And the reason these price differentials occur is solely because of the monopoly power that is given to these companies by the tri-merged rule. They want to maintain the tri-merged rule. That is tantamount to maintaining the monopoly power. In order to do that, they are simply silencing and getting rid of the one segment of the business that isn't associated with a bank, that isn't affiliated with a mortgage repository. But they don't make the tri-merged rule. Pardon? But they don't make the tri-merged rule, so how can suing them get a remedy against the tri-merged rule? If we accept that the tri-merged rule is legal in the first place and that perhaps their lobbying to get it is protected by North Pennington, let's accept that. As a monopolist, there are different rules that apply. They are not permitted to just do whatever they want in order to get rid of, for example, 800 of these smaller agencies that they've either acquired or driven out of business. Why don't you, instead of listing a long list of things they've done, just take the worst thing they've done and explain it to me in some detail. Well, it's death by 1,000 cuts, Your Honor. It's not one thing. I mean, one of the worst things is trying to compete. Are you saying, no, you're not going to do what I asked you to do? I'm going to do what you asked me to do. Okay. So why tell me by making it seem like you're not? Okay. So find the deepest paper cut of all. I don't understand any of that. Their prices are monopoly prices, and they're driving them out of business because they can't possibly pay the wholesale price and continue to sell mortgage credit reports in competition with those that don't have to pay monopoly prices. Now, they're calling it volume discounts, but that's they're so extreme that, in fact, what it is is simply eliminating them from the market with monopoly prices. Another thing they do is they put a line of business restrictions on their contracts. You may not sell a credit report for any other purpose but mortgage credit reporting. Another thing they do is to disrupt their businesses, changing the contract requirements, requiring unreasonable contracts that they can't abide by, because the requirements are so labyrinth that any minute somebody from Experian or TransUnion or Equifax can show up at one of these businesses and say, you're closed, you failed the audit, you're out of business. And they live under this threat every single day. I don't understand quite where the theory is made at. Let's say they do charge a dollar for a report where it's an auto loan and $3 for a report when it's a home mortgage, and there's no substantial difference in the efforts necessary to produce the report. Your inference is that that has to be the result of monopolization because of the different characteristics of, I think, the prime mortgage agreement on the mortgage market. Now, I can easily imagine, perhaps more easily, alternative theories. For example, the asset that the credit report is directed toward in the mortgage market is a much more expensive asset, so there's more financial risk from error. I don't know if they insure the way lawyers do. Lawyers will commonly charge more if there's a much greater risk involved than they will if there isn't. There's a certain insurance aspect. Also, on the mortgage, I don't know if the credit report is exactly the same, but a third factor that occurs to me is it may be that the car market is so competitive now because, oh, the car dealers are just in trouble and the manufacturers are collapsing, that instead of overpricing for the mortgage market, they're underpricing for the car market. I can't tell exactly what the monopolization theory is. Well, Judge, there's two pieces, and one of them is that we are alleging and have alleged in some detail the acts committed by these defendants to undermine our business and throw us out of business. And we have alleged that with enough detail, we ought to be permitted to prove that. Everybody would love it if all their competitors went out of business and they could charge more and they made a lot more money. Well, certain acts are... But I want to know what it is. Well, they are burning them down, okay? They're burning them down. How are they doing that? By making the conditions impossible for them to be in business. I mean, we've alleged that. We should be permitted to try to prove it. That's the anti-competitive conduct. The theory, the theory, which has to do with the why... Well, the reason for Twombly and Kendall is that it costs so much in lawyers' and experts' fees to get an antitrust case to summary judgment that unless you can figure out what they're about from the complaint, a district judge is supposed to dismiss them. That's the idea of it. And so... Well, I can understand... I'm trying to figure it out. Judge, I can understand a rule that says if you don't have express evidence of an agreement, then just stating that someone is competing well and inferring there must be some anti-competitive agreement there is not sufficient under Twombly. Here we are saying that there are two very clear elements. One is the anti-competitive conduct, which is itemized in the complaint. Itemized by... And we have witnesses standing by ready to talk about what it's like to have to do business with these monopolists and the way they're... This is not normal competition, is my point. We've alleged that clearly we should be able to have a chance to prove it. But the second thing is the purpose of the anti-competitive conduct. The purpose of it is to simply get them out of the market so that the market will be occupied only by either subsidiaries of them or other large financial institutions that do not do what they do. And what they do is bring transparency to the process, advocate on behalf of borrowers to raise their scores. They open up... They're the only interests that are aligned with the borrower. They want them out. Why? That maintains the tri-merge rule. With these guys making noise, Fannie and Freddie are going to say... And I would just like to say even with the tri-merge rule, even with an entry, even if a fourth repository come in, as long as Fannie and Freddie say that mortgages must be made with the three raw credit reports from these three defendants, then that entry will be competitively meaningless because why would anybody even enter a market where they couldn't sell anything? The problem is the tri-merge rule. The way to maintain it is get the independent CRAs out of business. That's the theory of the case. I'm sorry it took me so long to come down to the nine-year-old version of it, but that's what it is. We need this tri-merge rule. We want to keep it. Let's get these guys out of business. They are the only constituents in this market who are explaining to borrowers what's going on in their credit report, who are trying to fix scores, get them up rather than down. They are the only ones who can threaten, and they are the only ones who the promise of threatening, to change the status quo so that there is no longer a monopoly in the provision of the wholesale credit reports for tri-merge reports. And the antitrust injury? The antitrust injury is that they're thrown out of business, or they've lost profits because of the conduct of their counterparties in the wholesale market. I thought just being thrown out of business is not enough to show an antitrust injury. If you burn down your competitor's factory for anticompetitive purposes and they're out of business, the measure of damages is the value of the ongoing business. And it's the kind of damage that flows from an antitrust violation. And that's what we have. When you're a monopoly, you cannot simply go and do whatever you want to crush whoever you can. And that is simply the lesson that we've had over and over in antitrust, that that is why we have a monopoly power screen. There's no issue here that these guys in the market for wholesale credit reports for use in the mortgage industry have monopoly power. The issue is are they using it in an unlawful way, and is that causing antitrust injury to the plaintiffs? And we believe that's fully alleged in the complaint, and we ought to have an opportunity to prove it. Thank you. Thank you. Good morning, and may it please the Court. I think the key question is indeed the question that Judge Kleinfeld asked. This is a Section 2 case for monopoly maintenance. So it's not enough for them to allege that individual firms, plaintiffs or others, have suffered some harm in some sense, that they've been treated unfairly in some sense. The question is, has a monopoly been maintained? And to establish that claim, they have to plead facts to satisfy the Twombly standard, showing that absent the conduct at issue, something would have been different, that the alleged monopoly power would not have existed. And so, Judge Kleinfeld, I think your question got right to the point. The source of the alleged monopoly power here is the tri-merge requirement. So what is it that they're saying that would be different absent this conduct? That's the question. Counsel sought to answer that question by arguing that, well, the resellers, their clients, are the ones who would agitate, would lobby, would get on their soapbox to try to get the Fannie Mae, Freddie Mac, Ginnie Mae, the ones that we're calling the GSEs, government-sponsored entities, to get the GSEs to abolish this tri-merge requirement, which they admit is the source of the monopoly power that they allege. But where is the, there is no allegation of anything that's preventing them from agitating, from lobbying, for seeking the change that they claim would eliminate this monopoly power. They say, well, the defendants are trying to run the resellers out of business, their clients out of business. In fact, if you read the complaint, they don't actually allege that even they, the plaintiffs, can't profitably operate. So you're saying they don't show anything the majors could do, as opposed to something the government entities could do, or the government-sponsored entities could do, that would have any effect on the antitrust arm? Yeah. I mean, they admit that the source of this alleged monopoly power is the tri-merge requirement. He's alluded to, well, you know. Did I understand that right? I mean, when I said that, I meant it as a question. Yeah, and I was trying to make sure I understood the question, and so I apologize for trying to rephrase it. You understand it better than me. You're an expert and a specialist. As I understand it, they're admitting that the source of the monopoly power is this tri-merge report requirement that the government-sponsored entities have adopted. So maybe the defendants, the three credit repositories, had something to do with that. In fact, they don't allege that. And as Your Honor pointed out, even if the defendants had, that would be protected by Norah Pennington, which is really why they're not alleging that. So that is the source of the power, the alleged power, is this tri-merge requirement. And they have to somehow or other pin that requirement on the defendants in order to come even close to stating a claim. Well, I think what I am saying is that your clients see the plaintiffs as a threat to this requirement, because they're out there trying to persuade the agencies to roll back their requirement. And the way to avoid this rollback is by eliminating the plaintiffs. Yes, Your Honor. I think that's one theory that I think I heard. I agree. That is their theory. And so then the question is, under Twombly and Kendall, have they pled facts that make that theory plausible, and that give a reasonable expectation that they're going to be able to prove that theory? And that's where they fail. Because, number one, there's nothing to prevent them in any of the conduct, the litany of things that he just outlined, none of that prevents them from seeking the change that they say they want to seek. They say they're being hurt in their business, that many of them are out of business. That would give them all the more reason to be running to the GSEs, to be running to Congress, which regulates this in this area through the various statutes, to seek abolition of the tri-merge requirement. The conduct that they're alleging, they have not established that that has any causal connection to any inability of theirs to seek the change that they say they want. And that was point number one. Point number two is, their allegations don't establish that even they, the named plaintiffs, are being run out of business. They allege there's a price squeeze. They allege there's onerous contract terms. They don't allege that any of these things prevent them from profitably operating. Point number three is, even if these named plaintiffs that are here are having difficulty, they're being hurt in their business, they don't allege that other resellers are being run out of business. In fact, to the contrary, they affirmatively allege that the defendants are favoring large resellers. And contrary to what counsel just said, it's not simply resellers that are affiliated with the defendants or with other title companies or mortgage lenders. Their complaint in paragraph, I believe it's page, paragraph 118 of the Third Amendment complaint, specifically refers to other large resellers that are getting favorable pricing. And in their opening brief at page 15, they describe this in some detail. That they're a real problem. We have read the brief. Thank you. Thank you, Your Honor. Case as argued will stand submitted. Thank you. We will now hear argument in.
judges: Kozinski, Kleinfeld, Rawlinson